Sheila JOHNSON, Plaintiff–Appellant,

v.

**REGIONAL TRANSPORTATION DISTRICT, Defendant–Appellee.**

No. 94CA0795.

Colorado Court of Appeals, Div. IV.

Oct. 26, 1995.

Rehearing Denied Nov. 24, 1995.

Certiorari Denied May 20, 1996.

Sawaya & Rose, P.C., Christopher B. Dominick, Michael G. Sawaya, Denver, for Plaintiff–Appellant.

Michael A. Martinez, Denver, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this negligence action to recover damages for personal injuries, plaintiff, Sheila Johnson, appeals from the judgment which dismissed her complaint against defendant, Regional Transportation District (RTD), on the basis of sovereign immunity. We reverse and remand.

The complaint alleged that plaintiff was injured after she had disembarked from an RTD bus and was struck by another vehicle as she was crossing the highway to get to her parked car. It further alleged that plaintiff's injuries resulted from the RTD driver's negligent stopping in a traffic lane and across the highway from the regular RTD stopping place. RTD's answer, among other defenses, asserted that plaintiff's claim was barred by governmental immunity.

Both parties filed disclosure certificates, and the case was set for a jury trial. Prior to trial, the parties entered into a written stipulation which was filed with the court. The stipulation contained the following provisions:

1. On June 10, 1992, at approximately 11:30 p.m., Plaintiff, while walking west to east across the northbound lane of the 4800 block of Chambers Road, was struck by a vehicle being driven by Troy Craig Henderson.

2. The RTD bus ... was not present at the time and/or location of the accident involving Plaintiff and Troy Craig Henderson on June 10, 1992.

3. Plaintiff incurred medical expenses for treatment of injuries sustained as a result of being struck by this vehicle.

Subsequently, RTD filed a motion to dismiss the complaint pursuant to C.R.C.P. 12(b) for failure to state a claim upon which relief could be granted. In support of the motion, RTD argued that it was immune from liability unless plaintiff's injury resulted from the negligent operation of the bus.

On the first day of trial, based upon the briefs and oral argument, the trial court granted the motion. In so ruling, the court determined that RTD was immune from suit pursuant to § 24–10–106(1)(a), C.R.S. (1988 Repl.Vol. 10A) because plaintiff's injuries did not result from the operation of the RTD bus. Accordingly, the court dismissed plaintiff's claims with prejudice for lack of subject matter jurisdiction.

I.

Section 24–10–106(1)(a) of the Governmental Immunity Act (GIA) provides that a public entity's sovereign immunity is waived in an action for injuries resulting from a public employee's operation, in the course of his or her employment, of a motor vehicle owned or leased by the entity. Plaintiff contends that

the trial court erred in concluding as a matter of law that plaintiff's injuries did not result from the "operation" of the RTD bus, as that term is used in the GIA. We agree.

### A.

We first address, and reject, RTD's assertion that our review of the trial court's decision must be conducted under the clearly erroneous standard.

■ The issue of sovereign immunity is to be decided as a question of subject matter jurisdiction under C.R.C.P. 12(b)(1), and any factual dispute upon which the existence of jurisdiction may turn is for the trial court to resolve. Appellate review of such a factual determination is on a clearly erroneous basis. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

■ However, the trial court need only act as fact finder if it must resolve conflicting evidence in making its determination. If, as here, the underlying facts are undisputed, the issue is one of law, and we are not bound by the trial court's determinations. *See Kittinger v. City of Colorado Springs,* 872 P.2d 1265 (Colo.App.1993) (in determination of jurisdiction under C.R.C.P. 12(b)(1), the trial court's interpretation of the term "public" as used in the GIA was error as a matter of law); *Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo.App.1981). For similar reasons, we also are not required to accord to the court's statutory interpretation the deference otherwise given to a trial court's factual determinations. *See People v. Terry,* 791 P.2d 374 (Colo.1990) (appellate court is not bound by the trial court's interpretation of a statute).

### B.

In accordance with this standard of review, then, we address plaintiff's contention that the trial court erred by dismissing her complaint for lack of subject matter jurisdiction. We agree with plaintiff.

■ In the trial court, RTD argued that the term "operation of a motor vehicle," for purposes of the GIA, requires that a plaintiff be injured "by the actual movement of the vehicle or one of its parts." Accordingly, RTD argued, because it was undisputed that plaintiff was struck and injured by another car, RTD was immune from suit under the GIA. The trial court concurred and ruled that "the vehicle and its immediate physical extensions govern what is or should be considered part of its operation." We do not agree.

■ A basic purpose of the GIA is to permit claimants to seek redress for personal injuries caused by a public entity in specific circumstances. *State v. Moldovan,* 842 P.2d 220 (Colo.1992). And, the scope of immunity granted to the sovereign must be strictly construed. *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994).

Although the term "operation" is circumscribed in the GIA in relation to public facilities, *see* § 24–10–103(3), C.R.S. (1988 Repl. Vol. 10A) (defining "operation of a public facility" as the exercise of power, duties, and functions vested by law with respect to the purpose of the public facility), this rather broad term, as it pertains to motor vehicles, is neither defined in, nor limited by, that Act.

Hence, because it is undefined, we must assume that the General Assembly intended that the term be given its common and ordinary meaning. *See Bertrand v. Board of County Commissioners, supra.* "Operation," in its general sense, means "a mode of action, work, exercise of power," or "to run or control the function of." *Webster's Third New International Dictionary,* 1531 (1976); *see also* C.J. Babbitt, *The Law Applied to Motor Vehicles* § 335 (3rd ed. 1923) ("Probably no expression in our language possesses a more extended range of usefulness.").

Historically, the common and ordinary meaning of "operation," as used in the context of motor vehicles, has not been restricted to their physical defects or movements, but has included, as pertinent here, the stops such vehicles ordinarily make. *See* C.P. Berry, *Law of Automobiles* §§ 2.191 & 3.74 (7th ed. 1935) ("the word 'operated' is not … limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such

stops are to be regarded as fairly incidental to its operation").

■ From this, we conclude that negligently stopping to discharge a passenger at an improper place is part of the "operation" of a bus for which immunity has been waived by the GIA.

Furthermore, here, whether the place at which plaintiff was let off the bus was unsafe and whether plaintiff's subsequent action of crossing the highway to get to her car was a contributing or an intervening cause of her injuries remain disputed issues of fact which relate to the issue of RTD's liability. *See Albo v. Shamrock Oil & Gas Corp.,* 160 Colo. 144, 147, 415 P.2d 536, 537 (1966) ("[The] mere fact that other forces have intervened between the defendant's negligence and the plaintiff's injury does not absolve the defendant where the injury was the natural and probable consequence of the original wrong and might reasonably have been foreseen."). Similarly, standing alone, the fact that the bus was out of sight when plaintiff was injured neither absolves RTD from liability nor renders it statutorily immune from suit.

We hold, therefore, that the trial court erred in concluding, on this basis, that RTD was entitled to sovereign immunity as a matter of law. *See* § 24–10–106(1)(a).

Because of our disposition of this matter, we need not address plaintiff's other contention.

The judgment is reversed and the cause is remanded to the trial court for further proceedings.

MARQUEZ, J., concurs.

TURSI, J., dissents.

Judge TURSI dissenting.*

I respectfully dissent.

In the first instance, I am unpersuaded by the majority's avoidance of the standard of review of C.R.C.P. 12(b)(1) determinations as required by *Trinity Broadcasting of Denver,*

*Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

It is plaintiff's contention that the trial court committed reversible error in determining that her injuries did not result from the operation of the bus. In support of this contention, she argues that, but for the bus driver's decision that she exit at a non-designated stop, she would not have had to cross the street and, therefore, her injuries would not have subsequently occurred. I disagree.

Initially, I note that the sole issue before the supreme court in *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo. 1994) was whether a road grader is a motor vehicle within the purview of § 24–10–106(1)(a). Further, I note that, as pertinent here, *Bertrand* held: "[O]ne of the purposes of the GIA [is] to allow persons injured *by* a motor vehicle ... to seek compensation." *Bertrand v. Board of County Commissioners, supra,* 872 P.2d at 229 (emphasis added).

Hence, contrary to the majority's contention, I conclude that, to fit within the exception to the GIA created by § 24–10–106(1)(a), there must be a substantially direct connection between the actual operation of the motor vehicle and the injury for which a claim is made. In other words, there must have been a nexus with the operation of the motor vehicle and the injury, rather than a mere nexus with the method in which the operation of the bus service was provided.

Finally, I reject plaintiff's contention that the term "operation" in § 24–10–106(1)(a) must be interpreted as broadly as the phrase "use of a vehicle" in the No–Fault Act. *See Shandy v. Lunceford,* 886 P.2d 319 (Colo. App.1994) (the No–Fault Act contains no provisions which would permit the creation of an exception to the GIA's limitations as to when public employees may be held accountable in tort).

Accordingly, I would affirm the judgment.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).