Eddie Faye HARRIS, Plaintiff–Appellee,

v.

**REGIONAL TRANSPORTATION DISTRICT, Defendant–Appellant.**

No. 99CA0573.

Colorado Court of Appeals, Div. II.

May 25, 2000.

Rehearing Denied June 22, 2000.

Certiorari Denied Jan. 16, 2001.

A. Thomas Elliott, Jr., P.C., A. Thomas Elliott, Jr., Denver, Colorado, for Plaintiff–Appellee.

James A. Stadler, Associate General Counsel, Erica A. Weber, Assistant General Counsel, Regional Transportation District, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, the Regional Transportation District (RTD), appeals from the denial of its motion to dismiss for lack of subject matter jurisdiction the complaint brought by plaintiff, Eddie Faye Harris. We affirm.

According to the complaint, on December 6, 1997, while exiting a RTD bus, plaintiff slipped and fell on ice, snow, and slush that had accumulated on the interior steps of the bus. Plaintiff sought damages based on injuries she allegedly sustained in the fall.

RTD moved to dismiss plaintiff's complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1999. RTD argued that the accumulation of snow and ice on the steps of the bus did not fall within the GIA's waiver of immunity in § 24–10–106(1)(a), C.R.S.1999, for the "operation of a motor vehicle." In particular, RTD argued that the term "operation" has been limited to those actions integral to the act of driving a motor vehicle. Thus, because the removal of snow and ice from the steps was not required to drive the bus, RTD asserted that its immunity from liability was not waived under § 24–10–106(1)(a).

In ruling on RTD's motion, the trial court made the following findings:

> The term "operation" cannot be viewed in a theoretical vacuum. The "operation" of a bus is different than the "operation" of a snowplow or other publicly owned vehicles not designed for common carriage. The "operation" of a bus necessarily encompasses more than simply driving the bus around. The very purpose of a bus is to pick up and drop off passengers, and the movement of passengers into and out of the bus is controlled by the bus driver.

Based on these factors, and citing the supreme court's rule of construction in *Walton v. State*, 968 P.2d 636 (Colo.1998), that waivers of immunity are to be deferentially construed in favor of victims, the court concluded that plaintiff's claim fell within § 24–10–106(1)(a) and denied RTD's motion. RTD then brought this interlocutory appeal pursuant to § 24–10–108, C.R.S.1999.

Whether sovereign immunity has been waived is an issue of subject matter

jurisdiction to be determined by the trial court in accordance with C.R.C.P. 12(b)(1). *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). If, as here, the underlying facts are undisputed, the issue is one of law, and an appellate court is not bound by the trial court's determination. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997); *Johnson v. Regional Transportation District*, 916 P.2d 619 (Colo.App.1995).

■ Because the GIA is in derogation of Colorado's common law, the grant of immunity is to be strictly construed against the public entity, and the waiver provisions are to be deferentially construed in favor of victims. *See State v. Nieto*, 993 P.2d 493 (Colo. 2000); *Walton v. State, supra.*

■ Subject to an exception not pertinent here, § 24–10–106(1)(a) provides that sovereign immunity is waived by a public entity in an action for injuries resulting from the operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment. *See DiPaolo v. Boulder Valley School District, RE-2*, 902 P.2d 439 (Colo.App.1995).

■ The term "operation" is specifically defined in the GIA in relation to public facilities, *see* § 24–10–103(3), C.R.S.1999. However, operation is neither limited nor defined by the Act as it pertains to motor vehicles. Applying, then, the common and ordinary meaning, "operation" means "a mode of action, work, exercise of power," or "to run or control the function of." Thus, "operation," as used in § 24–10–106(1)(a), is a broad term which includes both the physical defects of a motor vehicle and its movement, as well as other actions fairly incidental to those defects or movements. *Johnson v. Regional Transportation District, supra*, 916 P.2d at 621 (negligently stopping to discharge a passenger at an improper place is part of the operation of a bus for which immunity has been waived by the GIA).

The waiver provision of § 24–10–106(1)(a) applies only to injuries which result from the operation of the motor vehicle by a public employee who is acting as the operator. Thus, "operation" necessarily refers to actions of the operator related to physical control of the functions of the motor vehicle, here, the bus. *See Stockwell v. Regional*

*Transportation District*, 946 P.2d 542 (Colo. App.1997) (immunity is waived under § 24–10–106(1)(a) for actions of the public employee that are necessary to operation of the vehicle).

■ Based on this definition and construing the waiver provision, as we must, deferentially in favor of victims, we hold that the alleged negligent failure of an RTD bus driver to ensure that passengers, such as plaintiff here, board and disembark safely is included in the waiver of immunity under § 24–10–106(1)(a). As noted by the trial court, the movement of passengers into and out of a bus is a function of the bus controlled by the bus driver. *See Stockwell v. Regional Transportation District, supra* (operation includes stopping the vehicle to allow passengers to board or disembark); *cf. Kallage v. Alvidrez*, 969 P.2d 743 (Colo.App.1998) (filling of cattle guard with sand and dirt by county snowplow operator constitutes operation of motor vehicle under the GIA).

RTD argues, however, that even if control of the boarding and disembarking of passengers otherwise is includable in the definition of "operation" under § 24–10–106(1)(a), here the injury was triggered by ice and snow on the bus steps, which, according to RTD, relates to the maintenance of the bus, or the lack of maintenance, for which there is no waiver of immunity. In particular, RTD argues, since any waiver of immunity for maintenance in other sections of the Act is set forth specifically, it is significant that it is not included in the waiver of immunity for operation of motor vehicles. We disagree.

"Operation of a public facility" is specifically defined in the GIA as the exercise of power, duty, and functions related by law with respect to the purpose of the public facility. Section 24–10–103(3). And, for certain public facilities, *e.g.*, public swimming facilities, immunity is waived for injuries resulting from "operation" *and* "maintenance." *See* § 24–10–106(1)(f), C.R.S.1999 (emphasis added). In contrast, for other public facilities, *e.g.*, correctional facilities, only "operation" but not "maintenance" of such facilities is included in the waiver.

However, as discussed, the definition of "operation" applicable to motor vehicles is, under the GIA, different from and broader

than that applicable to "public facilities." Thus, the omission of "maintenance" as a basis for the waiver of immunity for some public facilities is significant in some contexts. *See Pack v. Arkansas Valley Correctional Facility,* 894 P.2d 34, 38 (Colo.App. 1995) ("We conclude from this placement that, when the General Assembly intended to waive immunity for injuries resulting from improper maintenance [of public facilities] it did so explicitly."). However, we can draw no similar conclusion from the lack of the word "maintenance" in § 24–10–106(1)(a) pertaining to motor vehicles. The definitions of "operation" as they pertain, respectively, to public facilities and motor vehicles, simply are not the same.

Accordingly, under our interpretation of the GIA, if injuries otherwise result from the operation of a bus, even if the underlying cause may have been faulty maintenance, the waiver of immunity is applicable. Certainly, for example, a motor vehicle accident resulting from a skid ultimately caused by improperly inflated tires, or injuries resulting from the closing of a defective bus door on a passenger's arm, would fall within the waiver of immunity under § 24–10–106(1)(a).

We acknowledge RTD's concern that this interpretation places on it an unreasonable burden continually to ensure that its equipment is safe. Assuming, *arguendo,* that this is so, we simply note the distinction between a determination of the absence of governmental immunity, such as here, and a finding of liability. *See, e.g., Johnson v. Regional Transportation District, supra* (although immunity was waived under GIA, liability of RTD for alleged negligent stopping to discharge a passenger at an improper place remained to be determined at trial).

Accordingly, under the circumstances here, the trial court properly determined that RTD's immunity was waived by § 24–10–106(1)(a) as a matter of law.

The order is affirmed.

Judge PLANK and Judge DAILEY concur.