The STATE of Colorado; Colorado State University; Colorado State University Veterinary Teaching Hospital; Colorado State University College of Veterinary Medicine and Biomedical Sciences; Colorado State University College of Veterinary Medicine and Biomedical Sciences Veterinary Teaching Hospital; Dr. John Smith, D.V.M.; and Heidi Hamlin, Petitioners,

v.

Mary Beth HARTSOUGH and Patrick J. Hartsough, Respondents.

No. 88SC505.

Supreme Court of Colorado, En Banc.

April 30, 1990.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Timothy R. Arnold, Deputy Atty. Gen., Denver, for petitioners.

Zak, Fox, Pehr and Fuller, P.C., David W. Pehr, Westminster, for respondents.

Justice LOHR delivered the Opinion of the Court.

This case arises out of the death of a llama owned by Mary Beth and Patrick J. Hartsough. The llama was put to death following severe injuries sustained during a routine examination by Dr. John Smith and student Heidi Hamlin at Colorado State University's veterinary hospital. The Hartsoughs filed an action in Denver District Court against the State of Colorado, Colorado State University and two of its colleges, the veterinary hospital, the doctor and the student, seeking damages for the loss of the llama. The district court dismissed the complaint because it concluded that the Hartsoughs' claims were barred by the Colorado Governmental Immunity Act, §§ 24–10–101 to –120, 10A C.R.S. (1988). The Colorado Court of Appeals reversed. *Hartsough v. State*, 762 P.2d 758 (Colo.App.1988). We hold that the Colorado Governmental Immunity Act barred the Hartsoughs' claims and therefore reverse the judgment of the court of appeals.

In 1971, we prospectively overruled prior decisions in this state that recognized the defense of governmental immunity in tort actions. *See Evans v. Board of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist.*, 174 Colo. 110,

482 P.2d 966 (1971); *Proffitt v. State*, 174 Colo. 113, 482 P.2d 965 (1971). In response to these decisions, the legislature enacted the Colorado Governmental Immunity Act. Ch. 323, sec. 1, §§ 130-11-1 to -17, 1971 Colo.Sess.Laws 1204, 1204-11.

The Colorado Governmental Immunity Act makes public entities and public employees immune from claims for injury that lie in tort or could lie in tort, with some statutory exceptions. § 24-10-105, 10A C.R.S. (1988). This case presents the question of whether the operation of a veterinary hospital by a state university is among those exceptions.[1] The statute governing the resolution of this question is section 24-10-106(1)(b), 10A C.R.S. (1988), which provides in pertinent part:

> Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> . . . .
>
> (b) The operation of any public hospital, correctional facility, as defined in section 17-1-102, C.R.S.,[2] or jail by such public entity.

The district court dismissed the Hartsoughs' complaint based on the conclusion that the term "public hospital" in section 24-10-106(1)(b) does not include veterinary hospitals and therefore sovereign immunity has not been waived as to the operation of veterinary hospitals by public entities. The court of appeals reversed on the basis of its contrary conclusion that "public hospital" as used in that statute refers to all types of public hospitals, including veterinary hospitals. *Hartsough*, 762 P.2d at 759. We agree with the trial court's construction of the statute.

In *Stephen v. City and County of Denver*, 659 P.2d 666 (Colo.1983), we noted that because governmental immunity is in derogation of Colorado's common law, "legislative grants of immunity must be strictly construed." *Id.* at 668 n. 3. It remains true, however, that our primary task in construing a statute is to determine and give effect to the intent of the legislature. *Kern*, 746 P.2d 1340, 1344 (Colo. 1987). In determining the meaning of a statute we derive guidance from familiar principles of statutory construction. Words should be given their ordinary meaning. *People v. District Court*, 713 P.2d 918, 920 (Colo.1986). A word's commonly accepted meaning should be preferred over a strained or forced interpretation. *See Kern v. Gebhardt*, 746 P.2d at 1344. We must also look at the context in which statutory terms appear. *Sheely v. People*, 54 Colo. 136, 138, 129 P. 201, 202 (1912); *see Humana, Inc. v. Board of Adjustment*, 189 Colo. 79, 82, 537 P.2d 741, 743 (1975). Thus, "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it." *Sheely*, 54 Colo. at 138, 129 P. at 202.

In the present case, the context in which the word "hospital" appears in section 24-10-106(1)(b) provides important guidance as to its meaning. In that section public hospitals are grouped together with correctional facilities and jails, strongly suggesting that the section was intended to apply to public facilities designed to hold people. The Hartsoughs correctly point out that in the past other statutory provisions have used the term "hospital" to refer to a veterinary hospital. The context of those provisions, however, clarifies the term's meaning. In section 23-31-135(2), 9 C.R.S. (1986 Supp.),[3] a part of the article establishing

---

1. The Hartsoughs do not contend that the Colorado Governmental Immunity Act is inapplicable to any of their claims or that any of the defendants are not among the "public entities" and "public employees" protected by such immunity as the act may provide.

2. § 17-1-102(1) defines "correctional facility" to mean "any facility under the supervision of the department [of corrections] in which persons are or may be lawfully held in custody as a result of conviction of a crime."

3. § 23-31-135(2), 9 C.R.S. (1986 Supp.), was part of a section relating specifically to the financing of the construction of facilities for the Colorado State University Veterinary Medicine Hospital. § 23-31-135(2), provided in pertinent part:

> The [state] board [of agriculture] shall assess each cooperative state or accountable student a fee to reimburse Colorado for each such student's proportionate direct and indirect instructional costs and any operating deficit of *the veterinary hospital*. In addition, a fee

Colorado State University, a reference to the university's veterinary hospital precedes the phrase "the new hospital." In the context of that statute, "the new hospital" clearly refers to a specific veterinary hospital. In section 13-80-105, 6 C.R.S. (1985 Supp.),[4] the term "hospital" arguably includes veterinary hospitals because the section discusses both veterinarians and doctors who treat people. In contrast to these provisions, the context of section 24-10-106(1)(b) makes clear the legislature's intent to limit the term "hospital" to institutions providing care for sick and injured persons.

■ The construction of the term "hospital" to exclude veterinary hospitals is also supported by the term's ordinary meaning. The ordinary meaning of "hospital" is a place where sick or injured persons, not animals, are treated. *Webster's Third New International Dictionary* (1986) defines "hospital" as "an institution or place where sick or injured persons are given medical or surgical care." *Id.* at 1093. *Black's Law Dictionary* (5th ed. 1979) defines hospital as "[a]n institution for the treatment and care of sick, wounded, infirm or aged persons." *Id.* at 664. Similar definitions have been relied upon by this court as well as courts in other jurisdictions. *See McNichols v. City and County of Denver*, 120 Colo. 380, 386, 209 P.2d 910, 913 (1949); *Pellegrino v. City Council of Springfield*, 22 Mass.App.Ct. 459, 494 N.E.2d 1036, 1038-39 (1986); *Pagel v. Trinity Hosp. Assoc.*, 72 N.D. 262, 6 N.W.2d 392, 395 (1942); *REW v. Beneficial Standard Life Ins. Co.*,

41 Wash.2d 577, 250 P.2d 956, 958 (1952). Any ambiguity that might exist when the term "hospital" is found in isolation disappears when the term is found in the people-oriented context of section 24-10-106(1)(b). Because, read in context, the statutory language is unambiguous, the construction we adopt does not offend *Stephen*'s command that legislative grants of immunity be construed strictly.

■ The court of appeals reasoned that in enacting the Colorado Governmental Immunity Act the legislature distinguished between state functions that can be provided privately and those that cannot. 762 P.2d at 759. The court of appeals noted that the legislature waived immunity with respect to many of the functions that could be performed privately. *Id.* The court of appeals then concluded that "public hospital" should be construed to include veterinary hospitals to avoid the inequity of private veterinary hospitals being subject to suit and public veterinary hospitals being immune. *Id.* In enacting the Colorado Governmental Immunity Act, however, the legislature expressed its intention to abolish "the distinction for liability purposes between governmental and proprietary functions." § 24-10-102, 10A C.R.S. (1988). Moreover, section 24-10-106(1)(b) waives immunity for hospitals, which have private counterparts, as well as jails and correctional facilities, which are exclusively governmental entities.

■ We conclude that the term "public hospital" in section 24-10-106(1)(b), 10A C.R.S. (1988), does not include veterinary

based on costs of other facilities used in the professional veterinary medical program, shall be assessed to each accountable student, this fee being determined to be two thousand three hundred seventy-four dollars per accountable student; and, in addition, each accountable student or cooperating state shall be assessed a fee to reimburse Colorado for each accountable student's proportionate share of owning and operating costs of *the new hospital* not heretofore included.
(Emphasis added.) This provision has since been amended. *See* § 23-31-135(2), 9 C.R.S. (1988 & 1989 Supp.).

4. § 13-80-105(1), 6 C.R.S. (1985 Supp.), provided in pertinent part:

No person shall be permitted to maintain an action ... to recover damages from a licensed or certified *hospital,* health care facility, dispensary, or other institution for the treatment or care of the sick or injured ... or from any person licensed in this state or any other state to practice medicine, chiropractic, nursing, physical therapy, podiatry, *veterinary medicine,* dentistry, pharmacy, optometry, or other healing arts ... unless such action is instituted within two years after the person bringing the action discovered ... the injury.
(Emphasis added.) This section was repealed in 1986 and a similar provision was enacted at § 13-80-102(1)(c). Ch. 114, sec. 1, § 13-80-102(1)(c), 1986 Colo.Sess.Laws 695, 696.

hospitals and therefore the defendants are immune from the Hartsoughs' claims. We reverse the judgment of the court of appeals and remand the case to that court with instructions to reinstate the trial court's dismissal order.