Marsheila PLUMMER, Plaintiff–Appellee and Cross–Appellant,

v.

Kenneth LITTLE, M.D., and El Paso County Department of Health and Environment, Defendants–Appellants and Cross–Appellees.

No. 97CA1273.

Colorado Court of Appeals, Div. III.

Jan. 21, 1999.

Rehearing Denied Feb. 25, 1999.

Certiorari Granted Oct. 18, 1999.

Lehouillier & Associates, Patric J. Lehouillier, Alexanderia Mason, Colorado Springs, for Plaintiff–Appellee and Cross–Appellant.

Pryor Johnson Montoya Carney & Karr, Bruce A. Montoya, Elizabeth C. Moran, Englewood, for Defendant–Appellant and Cross–Appellee, Kenneth Little.

Long & Jaudon, P.C., Michael T. McConnell, Christine A. Craigmile, Denver, for Defendant–Appellant and Cross–Appellee, El Paso County Depart of Health and Environment.

Opinion by Judge JONES.

In this medical malpractice action, defendant, Kenneth Little, M.D., appeals from the

denial of his motion to dismiss on the basis of governmental immunity, the claim asserted against him by plaintiff, Marshiela Plummer. Plaintiff cross-appeals from the trial court's dismissal of her respondeat superior claim against defendant, El Paso County Department of Health and Environment (Department). The Department, in turn, cross-appeals from the trial court's denial of its motion to dismiss on the basis of governmental immunity. We affirm in part, reverse in part, and remand with directions.

Plaintiff initially brought this action against only Little seeking damages for his alleged failure to diagnose her breast cancer in a timely manner. More specifically, plaintiff claimed that Little had failed to order a mammogram after examining a small lump that she had discovered in her left breast approximately two months earlier.

Little moved to dismiss plaintiff's complaint on the basis that it was barred for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1998. Little argued that, as to all pertinent times here, he was a "public employee" for purposes of the GIA because the clinic at which he provided physician services as a part-time volunteer, was operated by the Department. Little submitted an affidavit stating that the treatment he provided to plaintiff was done within the course and scope of his employment at the clinic as a public employee.

As a result of Little's motion to dismiss, plaintiff moved to amend the complaint to join the Department as a defendant. The trial court granted plaintiff's motion and, thereafter, she filed an amended complaint asserting that the Department was liable under a theory of respondeat superior.

In ruling on Little's motion to dismiss, the trial court found that he had not provided sufficient documentation to establish that he was a "public employee" under the GIA. The court determined that the brief and affidavit submitted by Little simply alleged in conclusory terms that he was a public employee. Following the trial court's denial of his motion to reconsider, Little appealed the underlying decision to this court pursuant to § 24–10–118(2.5), C.R.S 1998.

The Department subsequently filed a motion to dismiss under C.R.C.P. 12(b)(5) asserting that it, like a hospital, could not be held vicariously liable for the negligence of a physician. The Department also filed a motion to dismiss under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction on the basis that the clinic was not a public hospital for purposes of the GIA. As such, it asserted that its immunity under the GIA had not been waived and that plaintiff's complaint against it must be dismissed.

The trial court denied the Department's motion to dismiss under the GIA, based on its determination that the clinic was a public hospital. The court, however, concluded that the Department could not be vicariously liable for the negligence of a physician and, therefore, granted the Department's motion to dismiss plaintiff's complaint against it pursuant to C.R.C.P. 12(b)(5).

Following plaintiff's request, the court certified its order granting the Department's motion to dismiss under C.R.C.P. 12(b)(5) as a final appealable order. Plaintiff appeals from that order and the Department cross-appeals from the trial court's determination that the clinic is a public hospital for purposes of the GIA.

I.

■ Little contends that the trial court erred in determining that he had presented insufficient evidence to demonstrate that he was a "public employee" for purposes of the GIA. We agree and conclude that he is entitled to assert immunity under the GIA as a defense to the claim brought by plaintiff.

In § 24–10–103(4)(b), C.R.S.1998, a pertinent portion of the definition of "public employee" states:

(I) Any health care practitioner employed by a public entity, except for any health care practitioner who is employed on less than a full-time basis by a public entity and who additionally has an independent or other health care practice. Any such person employed on less than a full-time basis by a county and who additionally has an independent or other health

care practice shall maintain the status of a public employee only when such person engages in activities at or for the county which are within the course and scope of such person's responsibilities as an employee of the county. . . .

. . . .

(V) Any health care practitioner who volunteers services at or on behalf of a public entity, or who volunteers services as a participant in the community maternity services program, established by section 26–15–109, C.R.S., as to the services which are volunteered.

A "health care practitioner" includes a physician and any person acting at the direction or under the supervision or control of the physician. *See* § 24–10–103(1.5), C.R.S. 1998.

Little's affidavit, which was attached to his motion to dismiss, stated that he was a physician, that he volunteered his services on a part-time basis at the clinic, and that he had treated and evaluated plaintiff within the course and scope of his duties as a physician at the clinic. In addition, in his answer, Little admitted that he is a licensed physician, that he periodically provided free medical services to the Department, and that he was acting in such a capacity when he examined plaintiff. Plaintiff did not controvert these statements.

In view of the answer and uncontradicted affidavit filed by Little, we conclude that the trial court erred in finding that he had presented insufficient evidence to establish that he was a "public employee" for purposes of the GIA. *See* § 24–10–103(4)(b), C.R.S.1998; *Capra v. Tucker*, 857 P.2d 1346 (Colo.App. 1993) (if all the relevant evidence has been presented to the trial court, and the underlying facts are not disputed, then the appellate court may decide the issue of sovereign immunity as a matter of law).

■ Contrary to plaintiff's contention, § 24–10–103(4)(b)(V), C.R.S.1998, unlike § 24–10–103(4)(a), C.R.S.1998, does not require that a health care practitioner prove that such practitioner is under the control of a public entity in order to establish that he or she is a "public employee" under the GIA. Accordingly, we conclude that Little is entitled to assert his status as a "public employee" against the claim brought by plaintiff.

II.

■ The Department and Little contend that the trial court erred in determining that the clinic was a public hospital for purposes of the GIA. We agree.

Section 24–10–106(1)(b), C.R.S.1998, waives immunity in an action seeking compensation for injuries resulting from the "operation of any public hospital. . . ." The term "operation" is defined in the GIA as including an act or omission of a public entity or its employees "with respect to the purposes of any public hospital. . . ." Section 24–10–103(3)(a), C.R.S.1998. The term "public hospital," however, is not defined by the GIA.

In interpreting the GIA, our goal is to give effect to the intent of the General Assembly. *City & County of Denver v. Gallegos*, 916 P.2d 509 (Colo.1996). Absent some contrary statutory indication, that intent is determined primarily from the statutory language itself interpreted in accordance with the plain and ordinary meaning of the terms used. *See State v. Hartsough*, 790 P.2d 836 (Colo. 1990).

■ In applying these rules, we are cognizant that the General Assembly has stated in the legislative declaration to the GIA that public entities should be liable "only to such an extent and subject to such conditions as are provided by this article." Section 24–10–102, C.R.S.1998. *See Smith v. Town of Estes Park*, 944 P.2d 571 (Colo.App.1996). Consistent with this language, the supreme court has determined that the waiver provisions of the GIA must be "narrowly interpreted to avoid imposing liability not specifically provided for in the statute." *City and County of Denver v. Gallegos, supra*, 916 P.2d at 511.

More recently, however, the supreme court stated that "the [GIA's] waiver provisions are entitled to deferential construction in favor of victims injured by the negligence of governmental agents, while immunity provisions are subject to strict construction." *Walton v.*

*Colorado,* 968 P.2d 636, 643 (Colo.1998). As was noted by a division of this court in *Farina v. City & County of Denver,* 940 P.2d 1004, 1006 (Colo.App.1996) the differing pronouncements on this issue have created "uncertainty over the manner in which the GIA is to be interpreted." In resolving that uncertainty here, we note that the court in *Walton* relied on the decision in *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994), without discussing *Gallegos.* In *Gallegos,* the court reviewed *Bertrand* in which it had held that grants of immunity must be strictly construed because governmental immunity is in derogation of the common law. Nevertheless, the *Gallegos* court concluded that the waiver provisions should be interpreted narrowly based on the General Assembly's intent as stated in the GIA's declaration of policy.

Thus, because the issue of interpretation of the GIA's waiver provisions was fully discussed in *Gallegos,* we determine that it is appropriate to apply the standard set forth in that decision here.

The common meaning of the term "hospital" is: "an institution or place where sick or injured persons are given medical or surgical care." *Webster's Third New International Dictionary* 1093 (1986); *see Black's Law Dictionary* 664 (6th ed.1990) (defining hospital as "[a]n institution for the treatment and care of sick, wounded, infirm or aged persons."); *see also State v. Hartsough, supra,* 790 P.2d at 839 (in addressing whether veterinary hospital was public hospital for purposes of GIA, court noted that "ordinary meaning of 'hospital' is a place where sick or injured persons, not animals, are treated."); *McNichols v. City & County of Denver ex rel. Newton,* 120 Colo. 380, 386, 209 P.2d 910, 913 (1949) ("The word 'hospital' in its ordinary usage means an institution for the medical or surgical care of the sick, the injured or the infirm.").

In comparison, the common meaning of the term "clinic" is: "an institution connected with a hospital or medical school where diagnosis and treatment are made available to outpatients." *Webster's Third New International Dictionary* 423 (1986); *see also Farina v. City & County of Denver,* 940 P.2d

1004, 1008 (Colo.App.1996) (in determining whether airport medical clinic was a "public" hospital, the court noted that "so long as the facility is owned and operated by the public entity, is devoted to a public purpose, and is beneficial to a substantial segment of the public, it is a public facility or hospital under the GIA.").

Here, the clinic operated by the Department provided diagnostic services, evaluations, and other medical services to women in the Colorado Springs area in an outpatient setting. The clinic did not provide inpatient services, nor was it licensed or affiliated with a licensed hospital. Any patient requiring emergency care would be sent to a local hospital.

Relying on *Farina v. City & County of Denver, supra,* the trial court found that the clinic was a "public hospital" for purposes of the GIA. However, we note that, in *Farina,* the defendants conceded that the clinic, which served persons who were injured while constructing Denver's new international airport, was a "hospital" for purposes of the GIA. Thus, the pertinent issue was whether the clinic, which served a restricted clientele, was a "public" hospital under the statute.

The Department and Little contend that if the General Assembly had intended to include clinics within the provision waiving immunity for public hospitals, it could have used the term "health care facility" or similar language. They note that when the General Assembly has intended for a statute to apply to facilities other than hospitals, it has commonly enumerated those facilities in the statute or used a categorical type of definition. Examples of such include § 13–64–202, C.R.S.1998 (defining "health care institution" for purposes of the "Health Care Availability Act" as including "any licensed or certified hospital, health care facility, dispensary, or other institution for the treatment or care of the sick or injured"); § 27–10–102(4.5), C.R.S.1998 (defining "facility" for purposes of mental health statutes as a "public hospital, or licensed private hospital, clinic, community mental health center or clinic, institution, sanitarium, or residential child care facility that provides treatment for mentally ill persons"); § 32–1–1003, C.R.S.1998 (authorizing

hospital districts to establish, maintain, or operate "public hospitals, convalescent centers, nursing care facilities, intermediate care facilities, emergency facilities, community clinics, or other facilities ... providing health and personal care services ...."); *see also* § 26–4–513, C.R.S.1998 (describing "clinic services" as including "preventive, diagnostic, therapeutic, rehabilitative, or palliative items or services furnished to outpatients").

The Department and Little also note that, when the General Assembly has wanted to modify the scope of certain provisions in the GIA, it has used alternative terms to do so. Examples include § 24–10–103(4)(b)("health care practitioner" when defining "public employee" and using the term "public entity" instead of "hospital" in describing when a "health care practitioner" is a "public employee" under the GIA); § 24–10–112, C.R.S. 1998 (stating that a claim may be settled or compromised with the consent of the "head" of the hospital).

Finally, the Department and Little note that, under § 25–3–301, et seq., C.R.S.1998, hospitals in Colorado must be licensed and are subject to comprehensive statutory regulation.

As previously noted, the clinic offered only outpatient care and was not licensed as a hospital, nor was it affiliated with a licensed hospital. Thus, except for the provision of certain limited medical services, the clinic did not share many of the characteristics commonly associated with a hospital.

Although it may not be necessary for a facility to be licensed as a hospital in order to be considered a "public hospital" for purposes of the GIA, it is an important factor for consideration. Further, the General Assembly's use of the term "hospital" without enumeration of other types of facilities, as it has done in other statutes involving health care, suggests that it intended the waiver of immunity for the "operation of a public hospital" to be limited. Accordingly, in the absence of an express legislative intent, we will not expand the waiver provision to include facilities other than those that provide specific hospital services, generally relating to inpatient care.

Therefore, based on the standard that must be applied in interpreting statutory waivers of immunity under the GIA, we conclude that the trial court erred in determining that the clinic was a "public hospital." Accordingly, the trial court also erred in failing to grant the Department's motion to dismiss for lack of subject matter jurisdiction because plaintiff's claim against the Department did not fall within one of the statutory exceptions to immunity.

Similarly, in light of our determination that Little is a "public employee" and is entitled to assert the GIA against the claim brought by plaintiff, we conclude that plaintiff's complaint against Little must also be dismissed for lack of subject matter jurisdiction under the GIA.

In view of our determination that the trial court lacked jurisdiction over plaintiff's claims against defendants, we need not address plaintiff's contention that the trial court erred in determining that the Department was not vicariously liable for the actions of Little. In addition, for the same reasons, we need not address Little's contention that the claim against him should be dismissed as duplicative of the claim against the Department.

The trial court's order determining that Little failed to establish that he was a "public employee" is reversed, the order determining that the clinic was a "public hospital" is also reversed, and the order granting the Department's motion to dismiss the *respondeat superior* claims is affirmed, albeit on the ground that the Department's immunity under the GIA was not waived. In light of these holdings, the cause is remanded to the trial court with directions to dismiss plaintiff's complaint against both the Department and Little for lack of subject matter jurisdiction.

Judge DAVIDSON and Judge RULAND concur.